**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
------------------------------------------------------- x
In re:                                            :
                                                  :        Chapter 11
HO WAN KWOK, et al.,[1]                            :
                                                  :        Case No. 22-50073 (JAM)
                        Debtors.                   :        (Jointly Administered)
------------------------------------------------------- x
LUC A. DESPINS, CHAPTER 11                         :
TRUSTEE,                                           :
                        Plaintiff,                 :
v.                                                 :        Adv. Proceeding No. 24-05246
                                                  :
WA & HF LLC,                                       :
                        Defendant.                 :
------------------------------------------------------- x
```

**CHAPTER 11 TRUSTEE'S (I) OBJECTION TO WA & HF LLC'S MOTION TO COMPEL RESPONSES TO REQUESTS TO ADMIT AND INTERROGATORIES, AND (II) CROSS-MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Luc A. Despins, in his capacity as Chapter 11 Trustee (the "Trustee") in the chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, hereby respectfully objects (this "Objection") to defendant WA & HF LLC's (the "Defendant") *Motion to Compel Responses to Requests to Admit and Interrogatories* [Adv. ECF No. 43] (the "Motion") and cross moves (this "Cross-Motion") for entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Proposed Order"), compelling the Defendant to supplement its responses to the Trustee's interrogatories and requests for production. In support of his Objection and Cross-Motion, the Trustee respectfully states the following:

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## I.    PRELIMINARY STATEMENT

1.      In this Adversary Proceeding, the Trustee seeks to avoid and recover fraudulent transfers that the Debtor made to the Defendant, ███████████████████████████ ███████████████████████████████████████████ █████████ ██████████████████████████████████████████, the Defendant received transfers of the Debtor's property—specifically $523,396.35, transferred between 2019 and 2020 through the Debtor's alter ego Saraca Media Group Inc. ("Saraca"). Documentary evidence reflects the Defendant's knowledge that the Debtor controlled Saraca; indeed, the Defendant alleged as much in a lawsuit filed against Saraca in August 2020.[3]

2.      In its Motion, the Defendant ignores the realities of this Adversary Proceeding: the Trustee was ***not*** involved in the Debtor's transfers of property to the Defendant and lacks any independent knowledge regarding the transfers or related events.  Rather, any information the Trustee has is in documents the Trustee obtained from third parties, which the Trustee has already provided to the Defendant through the Trustee's discovery database (the "Database").  Unlike the Trustee, the Defendant ***does*** have first-hand knowledge regarding the transfers it received and the related circumstances and events, including, among other things, the Defendant's support for the Debtor and his goals and knowledge of the Debtor's control of his alter ego.

3.      Notwithstanding this dynamic, the Defendant contends that the Trustee should review and analyze the many hundreds of thousands of third-party documents in the Database to provide the Defendant narrative interrogatory responses—primarily as to subject matter relevant, if at all, to the Defendant's asserted defenses.  As discussed herein, Rule 33 of the Federal Rules

---

█ ███████████

[3]    The Defendant and Saraca stipulated to dismiss the Defendant's lawsuit on April 1, 2022, after the Debtor had already filed for bankruptcy and without notice to or approval from the Bankruptcy Court.

of Civil Procedure (the "<u>Civil Rules</u>") does ***not*** require the Trustee to provide narrative interrogatory responses based on third-party documents as to which the Trustee lacks independent knowledge and which the Trustee has not yet had the opportunity to investigate through discovery in this Adversary Proceeding.

4.      Nor, as the Defendant contends, must the Trustee admit or deny matters outside the Trustee's knowledge, most of which, again, address the Defendant's contentions concerning its alleged defenses.  The Trustee lacks any first-hand information concerning these matters, and—contrary to the Defendant's position—the Trustee is not required to guess at admissions or denials based only on documents provided by the Defendant or that may be contained in the Database. Rather, the Trustee intends to investigate these matters, on which the Defendant bears the burden of proof and about which the Defendant (unlike the Trustee) has first-hand information, in further discovery in this Adversary Proceeding, including deposition discovery.

5.      Meanwhile, the Defendant has improperly objected to the Trustee's discovery requests by refusing to respond to the Trustee's requests for information concerning the Debtor's alter egos or the associated entities and individuals through which the Debtor conducted his fraudulent shell game, save only for Saraca.  The Trustee is entitled to investigate ***all*** of the Defendant's connections with the Debtor through any alter egos or agents, both in determining whether the Defendant received other avoidable transfers and in establishing the Debtor's fraudulent intent and the Defendant's good faith (or lack thereof).  It is especially important that the Trustee investigate these matters here, where ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ the Defendant was aware six years ago that the Debtor controlled Saraca, all of which strongly suggests that the Defendant may have had other connections with the Debtor and was on inquiry notice of the Debtor's fraudulent shell game.

3

6.      For all these reasons, and as discussed in further detail below, the Court should deny the Defendant's Motion and grant the Trustee's Cross-Motion.

## II.      BACKGROUND

### A.  Defendant's Receipt of Fraudulent Transfers and Related Events

7.      The Defendant received at least four transfers from the Debtor through his alter ego shell company, Saraca.  Two of these transfers took place in 2019, and the other two took place in 2020.  *See* Complaint, Schedule A.



10.     Later that year, on August 17, 2020, the Defendant filed a lawsuit against Saraca and the Debtor for breach of contract and defamation.  In its lawsuit, the Defendant alleged, among other things, that the Debtor controls Saraca.[6]  The parties entered a stipulated dismissal of this lawsuit on April 1, 2022, after the Debtor had already filed bankruptcy, without notice to or approval from the Bankruptcy Court.[7]



[6]    Ex. 1, ¶ 5.

[7]    Ex. 2.

**B.   Trustee's Avoidance Action and Procedures Governing Avoidance Claims**

11.   In the course of his investigation, the Trustee obtained records reflecting transfers of the Debtor's property to the Defendant through Saraca, which the Debtor effectuated as part of his shell game to hinder, delay, or defraud his creditors.

12.   Accordingly, the Trustee filed his Complaint on February 15, 2024, asserting claims under section 548 of the Bankruptcy Code and under section 544 of the Bankruptcy Code and sections 273, 274, and 276 of New York's Debtor and Creditor law, as well as section 550 of the Bankruptcy Code, to avoid and recover the Debtor's actual intent fraudulent transfers to the Defendant.   The Trustee's claims include, ***but are not limited to***, the Debtor's transfers to the Defendant through Saraca.[8]

13.   On November 7, 2025, the Court entered the *Order: (A) Granting in Part Chapter 11 Trustee's Motion for Entry of Order Amending Avoidance and Mediation Procedures; and (B) Entering Avoidance Actions Pretrial Order* (Main Case ECF No. 4828) (the "Avoidance Pretrial Order"), which established certain discovery procedures that applied in all avoidance action proceedings, including the instant action.   Pursuant to the Order, the Trustee was required to produce responsive documents into a document depository organized into data rooms (the "Database").   On April 22, 2026, the Court amended the Avoidance Pretrial Order to revise discovery deadlines and trial dates for the Avoidance and Omnibus Alter Ego Actions.   The amended order did not otherwise alter the discovery procedures discussed herein.

14.   On November 14, 2025, the Defendant filed its *Pre-Motion Request* [ECF No. 32] asking the Court for permission to file a motion to dismiss.[9]   On January 16, 2026, the Court denied

---

[8]   *See* Complaint at ¶¶ 27, 33.

[9]   In the Pre-Motion Request, the Defendant set forth four bases for its proposed motion to dismiss: (1) the Complaint failed to state a claim because the 2019 fraudulent transfers were time barred under section 548(a)(1);

the Defendant's Pre-Motion Request, specifically finding that each of the Defendant's bases for filing a motion to dismiss "is without merit." [ECF No. 38].

15. The Database contains all non-privileged documents in the Trustee's possession, custody, or ability to control relevant to the Trustee's claims and the Defendant's defenses in this Adversary Proceeding. The Database includes, among any other things, multiple "search" folders with documents specifically relevant to this Adversary Proceeding. These include: (a) a folder containing any documents mentioning Saraca; (b) a folder containing any documents mentioning the Defendant; and (c) a folder containing documents reflecting the transfers of the Debtor's property to the Defendant (to the extent that the Trustee is presently aware of same).

16. Because the "vast majority" of the Trustee's documents were produced to the Trustee by third parties, the Avoidance Pretrial Order provides that the Trustee makes "no representations as to the accuracy or authenticity of such documents." *See* Avoidance Pretrial Order at V(A). The Trustee complied with his production obligations on January 2, 2026.[10]

## C. **Parties' Written Discovery in Adversary Proceeding**

17. On February 9, 2026, the Trustee served the Defendant with (a) requests for production of documents (the "Trustee's RFPs"), (b) interrogatories (the "Trustee's Rogs"), and (c) requests for admission (the "Trustee's RFAs") (collectively, the "Trustee's Discovery Requests"). On the same day, the Defendant served the Trustee with 10 interrogatories (the "Defendant's Rogs") and 10 requests for admission (the "Defendant's RFAs") (collectively, the "Defendant's Discovery Requests" and, together with the Trustee's Discovery Requests, the

---

(2) the Complaint failed to adequately plead that the Defendant did not take the transfers in good faith and for value; (3) the Complaint failed to adequately plead viable claims; and (4) *res judicata* and/or collateral estoppel bars the Trustee from relitigating claims against the Defendant.

[10] The vast majority of the Trustee's relevant, non-privileged documents were uploaded to the database as of that date. Over the following month, the Trustee supplemented the contents of the Depository as a review of privileged and partially privileged documents and communications was completed.

"Discovery Requests").   The Trustee also received, and was required to simultaneously respond to, over a hundred sets of interrogatories and requests for admissions from other parties.

18.     On March 11, 2026, the parties served responses and objections to each other's Discovery Requests (the "R&Os").  Thereafter, the parties exchanged issues lists concerning the R&Os that each had served.  In his issues list, among other things, the Trustee specifically flagged the Defendant's improper limitation of his responses to the Trustee's Discovery Requests to only address transfers from and interactions with Saraca.

19.     The parties held telephonic meet and confers on March 20, 2026 and April 2, 2026. Both times, Trustee's counsel stated that the scope of the Defendant's responses and production must cover not only Saraca but also the Debtor, the Debtor's other alter egos, and the Debtor's associated entities and individuals.  The Defendant refused to amend or supplement any of its responses even as to communications or transfers involving the Debtor himself, despite acknowledging in its lawsuit against Saraca that the Debtor controlled Saraca.[11]

20.      On April 10, 2026, the Trustee served the Defendant with supplemental R&Os to the Defendant's Rogs, addressing numerous of the issues raised by the Defendant in the March 20 and April 2 calls.  By contrast, notwithstanding the Trustee having provided an issues list and his counsel having participated in two telephone conferences, the Defendant has refused to make any concessions or to meaningfully supplement its responses or production to address the issues the Trustee raised.

---

[11]   Pursuant to D. Conn. Local Rule 37(a), attached hereto as **Exhibit B** is Trustee's counsel's affidavit certifying that Trustee's counsel has met and conferred with the Defendant's counsel in an effort in good faith to resolve by agreement the issues raised by the Trustee's Cross-Motion.

### III.   DEFENDANT'S MOTION TO COMPEL SHOULD BE DENIED

#### A. Trustee's Responses to the Requests for Admission Are Proper

21.    Under Rule 36, the Trustee is required to either admit, deny, or "state in detail why [he] cannot truthfully admit or deny" the Defendant's RFAs.  Fed. R. Civ. P. 36(a)(4).  The Trustee has clearly done so here—he has either admitted or denied the Requests, or he has provided a detailed explanation as to why he cannot provide an answer.

22.    The Defendant suggests that the Trustee's responses are nevertheless defective because he did not explicitly state that he conducted a "reasonable inquiry" in stating that he is unable to admit or deny RFAs ## 1-3, 5-6, and 9-10,[12] all of which concern the Defendant's relationship with the Debtor through his alter ego, Saraca, and the services that the Defendant contends it provided to this alter ego.  This argument is meritless; the Trustee's responses reflect that the Trustee has made reasonable inquiries into all of the Defendant's RFAs, which the Trustee's counsel further made clear when the parties met and conferred.

23.    The Defendant improperly seeks to require the Trustee to opine as to facts and circumstances outside of his knowledge.  As the Defendant knows, the Trustee's only knowledge as to this action is from documents the Trustee obtained from third parties, which documents: (a) the Trustee either obtained from the Defendant or has already provided to the Defendant in the Database, and (b) the Trustee is investigating and analyzing in these discovery proceedings.

24.    A reasonable investigation does not, as the Defendant suggests, require the Trustee to admit or deny facts outside of his knowledge or admit or deny the accuracy or authenticity of third-party documents or their contents.  The Court recognized as much in the Avoidance Pretrial

---

[12]   The Defendant also identifies Request No. 7 as one that the Trustee was unable to admit or deny (Motion at 5), but that is incorrect.  As discussed *infra*, the Trustee admitted that "this proceeding seeks recovery of the transfers identified in Schedule A of the Complaint."

8

Order, which provides that the Trustee does not and cannot provide representations as to the accuracy or authenticity of documents in the Database.  *See* Avoidance Pretrial Order at 10; *see also JZ Buckingham Investments LLC v. U.S.*, 77 Fed. Cl. 37, 48 (2007) (party not required to admit or deny the authenticity of documents created by an unaffiliated third party as it would "need to inquire of third parties that were engaged in the transactions" to "respond conclusively to the requests for admission").

25.     Thus, the Trustee cannot state whether a copy of a purported agreement between the Defendant and Saraca is true and accurate (**RFA # 1**), because the Trustee has no independent knowledge regarding the execution of and any performance that did or did not occur in respect to that document.  Much less does the Trustee have independent knowledge as to the subject matter of: (i) **RFAs ## 2 and 3**, *i.e.,* whether Saraca received services or value from the Defendant under said agreement; (ii) whether the Defendant chose to commence litigation against Saraca in connection with that agreement (**RFA # 5**); or (iii) what compensation, if any, the Defendant is allegedly entitled to under said agreement (**RFAs ## 6, 7, and 9**).  *See T. Rowe Price Small Cap-Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997) ("Rule 36 is not a discovery device" as "the purpose of the rule is to reduce the costs of litigation . . . it would far exceed the 'reasonable inquiry' provision of Rule 36 to require [a party] to . . . review large volumes of [third-party] documents and incur whatever additional expense might be involved in their production"); *Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 318 (S.D.N.Y. 2008) (requests for admission are "unduly burdensome" where party has "access to documents through earlier [] discovery . . . sufficient to prove many of the facts for which they request an admission," as such requests "appear to be an attempt to shift the burden of sifting through this discovery" onto the opposing party, which is "not an appropriate use of Rule 36"); *see also* Rule 36, Notes of Advisory Committee on

Rules, 1970 Amendment (Rule 36 is not intended to give the answering party an unreasonable "burden" of "proving the other side's case").

26.     Nor can the Trustee confirm the nature of any relationship between the Defendant and either the Debtor or Saraca (**RFA # 10**).  The Trustee has no independent knowledge of that relationship, and is not required to sift, investigate, and draw conclusions from third-party documents the Trustee has not authenticated without the benefit of having conducted his own discovery. *Id.*

27.     Notably, the Defendant's Motion is further improper, because the Defendant inaccurately describes its own requests and the Trustee's responses to same—specifically as to **RFAs ## 5, 7, and 9**.  The Defendant suggests that the Trustee failed to respond to Request No. 5, which it characterizes in its Motion as only "request[ing] that [the Trustee] admit that the Defendant commenced litigation against Saraca."  Motion at 6.  This is simply untrue: Request No. 5 asks the Trustee to "[a]dmit that Defendant commenced litigation against Saraca *to recover the full payments due under the Agreement*."  (emphasis added).  Of course, the Trustee does not dispute that the Defendant commenced a lawsuit against Saraca and the Debtor and contended therein that it was entitled to contract damages against the former.  However, as the Trustee has made clear to the Defendant, the fact that the Trustee may now be "aware of this litigation" does not give the Trustee insight into the *merits* of the Defendant's prior claims.

28.     The Defendant also suggests that the Trustee's responses to **RFAs ## 7 and 9** are improper because they are "simply not legal conclusions, as the Trustee alleges."  Motion at 6.  But the Trustee did not object to RFA # 7 on the grounds that it calls for a legal conclusion; instead, the Trustee objected for the same reasons discussed above, that the Request (to "[a]dmit that [the Trustee's claims in this Adversary Proceeding] seek[] recovery for payments received by the

10

Defendant pursuant to this Agreement") requires the Trustee to authenticate and otherwise have knowledge of an agreement that the Trustee was not a party to and knowledge of third parties' conduct in respect to same. And **RFA # 9** (which calls for the Trustee to admit that the "Agreement requires payments greater than the amounts of the transfers you are seeking to recover in this case") *does* require a legal conclusion. It is not, as the Defendant suggests, a "simple mathematical exercise of comparing Schedule A . . . to the terms of the agreement"—the Trustee is required to analyze what the terms of the purported agreement are, evaluate whatever performance occurred (as to which, as discussed above, the Trustee has no knowledge), and form a legal conclusion regarding the parties' respective rights and obligations with respect to same.[13] Further, assuming *arguendo* that an enforceable agreement existed, the Trustee is not aware the extent to which the Defendant performed under such agreement such that it would be entitled to any amounts.

### B. Trustee's Responses to the Interrogatories Are Proper

29. The Defendant's interrogatories at issue mostly concern the Defendant's asserted defenses.[14] The Defendant bears the burden of establishing such defenses and the Trustee has no independent knowledge of them, which is why he is investigating them in discovery.

30. The Defendant inaccurately contends that the Trustee's interrogatory responses require the Defendant to guess at the factual basis for the Trustee's claims. In so doing, the

---

[13]  Moreover, as the Trustee specifically noted in both the Complaint and in correspondence to the Defendant, the Trustee is pursuing the recovery of all transfers to the Defendant by the Debtor, including, without limitation, those identified in Schedule A. *See* Compl. at ¶¶ 27, 33; Ex. 7. Accordingly, any response to this Interrogatory is at minimum premature, as there may still be additional transfers, whether made through Saraca or another of the Debtor's many alter ego shell companies, that are subject to avoidance and which would necessarily change any answer to this Request. Further, if the answer to this request is simple "math" as the Defendant contends, that fact should be very simple for him to prove on his own, and he does not need an admission from the Trustee. In this regard, the Defendant's motion is an unnecessary waste of the parties' and the Court's time and resources.

[14]  Rog # 2 asks about "compensation" the Defendant contends it obtained under the alleged contract with Saraca and the Defendant demands a narrative response concerning same. Rogs ## 6, 8, 9, and 10 all concern the parties' rights under the alleged agreement or otherwise whether the Defendant gave value in exchange for the transfers specified in the Complaint.

Defendant persists in misapprehending the substance of the Trustee's claims—*i.e.*, by insisting that they turn on the Defendant's and Saraca's rights and obligations under an alleged contract.  In reality, as this Court has repeatedly recognized, the Trustee's fraudulent transfer claims are premised on the Defendant having concealed and transferred assets through a fraudulent shell game to hinder, delay, or defraud his creditors.  *See, for example,* ECF No. 38, at 3-4 ("The Court agrees with the Trustee that he has pled the necessary badges of fraud to establish the Debtor's actual fraudulent intent.  For example, the Trustee alleges: (i) the Debtor made the transfers to WA as part of his 'shell game', and (ii) the purpose of the Debtor's shell game was 'to conceal and dissipate millions of dollars in assets while falsely pleading poverty to his many creditors,' including by concealing and dissipating assets obtained from victims of various fraudulent schemes"); *see also Despins v. Mitchell*, No. 22-50073, ECF No. 59, at 4.  The Trustee has plainly stated as much in his Complaint, as well as in response to Defendant's Rog # 2.

31.     The Defendant compounds its error by misstating the Trustee's obligations under Civil Rule 33.  The Trustee need not, as the Defendant suggests, analyze a library of third-party documents as to which the Trustee lacks any independent knowledge to provide narrative responses—much less in response to interrogatories primarily addressing the Defendant's theory as to its purported defenses.  Accordingly, the Trustee has properly referred the Defendant to the Database such that the Defendant may conduct its own analysis of the third-party documents therein.  *See* Trustee's Responses to Defendant's Rogs ## 1, 5-10.

32.     The Defendant responds by purporting to invoke Civil Rule 33(d) to contend that the Trustee must identify specific records within the Database for the defendant to review.  But the Defendant's reliance on Rule 33(d) is misplaced; this provision of Rule 33 applies only to the party's *own* business records and does not impose any further duty to review third-party

documents. *See In re Savitt/Adler Litigation*, 176 F.R.D. 44, 49-50 (N.D.N.Y. 1997) (noting that depositions, answers to interrogatories by third parties, and other documents produced by other parties during discovery do not qualify as business records under Rule 33(d)).

33.     Civil Rule 33 instead requires the Trustee only to provide information that is reasonably "available" to him.  That requirement does not extend to reviewing millions of pages from hundreds of thousands of third-party documents to answer the Defendant's interrogatories, particularly where those interrogatories primarily concern the Defendant's asserted defenses.  *See Murphy v. Piper*, 2017 WL 11885690, at *5 (D. Minn. Aug. 21, 2017) ("Plaintiffs appear to suggest that a party responding to interrogatories must obtain and review third-party documents pursuant to Rule 34 in order to completely answer interrogatories.  This broad proposition is unsupported"); *American Intern. Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401 (N.D. Ill. 2007) (request for "order compelling defendants to review [unaffiliated third party] documents in order to provide responses to plaintiff's interrogatories" denied as "unduly burdensome and expensive"); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 605 B.R. 617, 630-31 (Bankr. S.D.N.Y. 2019) (denying motion to compel requiring Trustee to "rummage through a [] [d]atabase of 30 million documents and another 13,000 boxes of documents in the hope that he can cull out documents that will support their theory" as "disproportionate and burdensome" due to the "monumental" cost).

34.     As the Trustee has repeatedly advised the Defendant, the documents in the Database are third-party documents, and the Trustee has no more knowledge of their contents than the Defendant.  Indeed, to the extent that documents in the Database are relevant to the Defendant's defenses, the Trustee almost certainly has *less* knowledge regarding their contents than the Defendant, because the Defendant (unlike the Trustee) participated in the underlying events.

13

## C. Defendant's Specific Objections to Trustee's Responses Are Unavailing

35. **Rog # 2:**[15] The Defendant argues that the Trustee's response fails to describe how the Debtor benefited from the transfers at issue because the Trustee "fails to identify any information pertaining to this Defendant" and instead "generally cites to the general conduct of the Debtor." The Trustee explains in his response how the Debtor benefited from being able to use his alter egos to run his shell game (which enabled the Debtor to conceal his ownership and use of his property while concealing same from his creditors). Answering this interrogatory does ***not*** require the Defendant to specifically discuss the Defendant and, as such, the Trustee has not done so. The Trustee reserves the right to supplement this response based on further information obtained in the course of discovery.

36. **Rog # 3:**[16] The Defendant states that the Trustee fails to adequately respond to this interrogatory (regarding whether the Debtor was insolvent or undercapitalized at the times of the transfers) because the Trustee did not "defin[e] what those relevant times even are, where the Debtor has represented this, or any sufficient information required by the Interrogatory." Motion at 9. This is false. In the Trustee's supplemental R&Os, the Trustee supplemented his response to this Interrogatory by identifying specific Court documents where the Debtor represented that he was insolvent (which documents are plainly dated). *See* ECF # 45, Ex. F.

37. **Rog # 4:** The Defendant inaccurately describes this interrogatory, which specifically requests that the Trustee "identify in detail the factual investigation [] that was conducted in this case prior to bringing the claim against this Defendant"; this is clearly an

---

[15] Rog #2 asks: "Please identify and/or state the specific factual basis as to how the Debtor was able to 'benefit from his fraud' by Saraca providing compensation to WA & HF in 2019 and 2020."

[16] Rog #3 asks: "Please identify and/or state the factual basis for your claim that the Debtor was "insolvent or undercapitalized" at the time of the transfers identified in Schedule A of your complaint, including but not limited to the first date upon which the Debtor became so."

14

inappropriate request for attorney work product and further it is irrelevant, and the Trustee appropriately objected on those grounds. *See In re Priceline.Com Inc. Sec. Litig.*, 2005 WL 1366450, at *4 (D. Conn. June 7, 2005) ("information [] accumulated during the course of plaintiffs' attorney's investigation . . . is attorney work product"); *United States v. Dist. Council of New York City & Vicinity of United Bhd. Of Carpenters & Joiners of Am.*, 1992 WL 208284, at *10 (S.D.N.Y. Aug. 18, 1992) ("How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled").

38. **Rogs ## 5, 6, 8, and 10:**[17] These Interrogatories relate to (i) the Defendant's relationship with the Debtor or Saraca; (ii) value the Defendant purportedly provided to the Debtor or Saraca; and (iii) services the Defendant contends that it performed for the Debtor or Saraca. These matters are primarily relevant to the Defendant's asserted defenses. Any information that the Trustee has concerning same is in documents the Trustee obtained from the Defendant or from third parties, as to which the Trustee has no independent knowledge. As discussed above, the Trustee is not obligated to review and analyze a massive trove of third-party documents as to which the Trustee lacks independent knowledge to provide the Defendant narrative responses. Much less

---

[17] Rog #5 asks: "Please identify any and all factual information reflecting, pertaining to, or in any way bearing on the relationship of the Defendant to the Debtor or Saraca."

Rog #6 asks: "Please identify any and all factual information, including by name, date and description/bates number of document if applicable, reflecting that the alleged transfers subject of this case were not provided for value."

Rog #8 asks: "Please identify any and all factual information pertaining to, supporting or in any way bearing upon any claim that Defendant did not perform the services referenced under the terms of the Agreement."

Rog #10 asks: "Please state whether Saraca received the software development services referenced within the Agreement."

is the Trustee required to do so when the subject matter at issue primarily concerns the Defendant's asserted defenses and the Defendant, unlike the Trustee, participated in the underlying events.

39.    **Rog # 7**:[18]  The Defendant similarly argues that the Trustee's response to this Interrogatory (requesting information as to whether these transfers were "made for any improper purpose") is deficient because the Trustee fails to identify specific factual information "reflecting that the transfers were not for value."  The Defendant's objection is, like its other objections, based on its misunderstanding of the Trustee's claim.  The transfers at issue were made for an improper purpose because they were made with the intent to hinder, delay, or defraud the Debtor's creditors; accordingly, the Trustee's supplemental response to Rog #7 (*see* Dkt. 45, Ex. F), which provides further information about the Debtor's shell game and his use of transfers to conceal and dissipate millions of dollars in assets from his many creditors, plainly addresses this interrogatory.

40.    **Rog # 9**:[19]  This interrogatory is plainly irrelevant and argumentative and, again, reflects the Defendant's misapprehension of the Trustee's claims.  The Trustee has not asserted claims under any alleged contract; rather, the Trustee has asserted claims that the Debtor fraudulently transferred his property to the Defendant as part of his fraudulent shell game.  Accordingly, the Trustee's response—that the Defendant is not entitled to retain actual intent fraudulent transfers—sufficiently responds to this interrogatory (to the extent that any response is required at all).

---

[18]    Rog #7 asks: "Please identify any and all factual information, including by name, date and description of document if applicable, reflecting that the alleged transfers were made for any improper purpose."

[19]    Rog #9 asks: "Please state whether it is your contention in this case that Defendant is not entitled to be compensated for any services rendered under the terms of the Agreement."

## IV.    TRUSTEE'S CROSS-MOTION SHOULD BE GRANTED

41.    The Trustee's Discovery Requests seek documents and information concerning the Debtor and the Debtor's Alter Ego Entities and Debtor-Associated Entities/Individuals.[20]

---

[20]    Under the Trustee's Discovery Requests:

"Alter Ego Entity" is defined to mean: any "entity alleged to be controlled by, or acting for the benefit of, the Debtor, including but not limited to the following: AA Global Ventures Limited; AAGV Limited; ACA Capital Group Ltd; Ace Decade Holdings Limited; Alfa Global Ventures Limited; Alfonso Global Ventures Limited; Allied Capital Global Limited; Alzarro Enterprises Ltd.; Ampleforth Capital Limited; Anton Development Limited; Assets Sino Limited; Auspicious Coast Limited; Bouillor Holdings Limited; Bravo Luck Limited; BSA Strategic Fund I; Buck Esq. LLC1 ; Canadian Agri-product Monetary Investments Limited; China Golden Spring Group (Hong Kong) Ltd; Crane Advisory Group LLC; Creative Apex Investments Limited; Crystal Breeze Investments Limited; Delta Konsult Limited; Eagle Eye Investments Limited; Eastern Profit Corporation Limited; Elite Well Global Limited; Fiesta Investment Ltd.; Freedom Media Ventures Limited; G Club International Limited; G Club Operations LLC; G Fashion; G Fashion Hold Co A Limited; G Fashion Hold Co B Limited; G Fashion International Limited; G Music LLC; GF IP, LLC; GF Italy, LLC; GFashion Media Group Inc; GFNY, Inc.; Globalist International Limited; Glory Asia (H.K.) Limited; Gold Perfect Limited; Golden Spring (New York) Ltd.; Greenwich Land LLC; Group Dynasty Limited; GS Security Solutions Inc.; Guang Hong Limited; H Reserve Management Limited; Hamilton Capital Holding Limited; Hamilton Investment Management Limited; Hamilton Opportunity Fund SPC; HCHK Property Management, Inc; HCHK Technologies, Inc.; Head Win Group Limited; HGA Property Operation LLC; Himalaya Currency Clearing Pty Ltd; Himalaya International Clearing Limited; Himalaya International Financial Group Limited; Himalaya International Payments Limited; Himalaya International Reserves Limited; HK International Funds Investments (USA) Limited, LLC (HK USA); Holy City Hong Kong Ventures Limited; Hong Kong International Funds Investments Limited; Hudson Diamond Holdings, Inc.; Hudson Diamond NY LLC; Infinite Increase Limited; Infinitum Developments Limited; Infinity Treasury Management Inc.; Insight Phoenix Fund; Joincorp International Limited; Joy Chance Holdings Limited; K Legacy Ltd.; Kingdom Rich Limited; Lamp Capital LLC; Leading Shine Limited; Leading Shine NY Ltd.; Lexington Property and Staffing, Inc.; Long Gate Limited; New Dynamic Development Limited; New Miracle Limited; Noble Fame Global Limited; Pacific King Investment Limited; Rich Group Development Limited; Rising Sun Capital Ltd; River Valley Operations LLC; Rosy Acme Ventures Limited; Rule of Law Foundation III, Inc.; Rule of Law Society IV, Inc.; Sail Victory Limited; Saraca Media Group Inc.; Strong Country Holdings Group Limited; Taurus Fund LLC; Thousand Stars Company Limited; Whitecroft Shore Limited; and Wise Creation International Limited. As to any such entity, this term shall include any agents, representatives, employees, directors, officers, managers, members, attorneys or other persons acting on its behalf."

"Debtor-Associated Entities/Individuals" is defined to mean any of the following: "7000R Corp.; Aaron Mitchell; AI Group Holdings Inc.; Alex Hadjicharalambous; Amy Buck; Ana C. Izquierdo-Henn; Anthony DiBattista; Arethusa Forsyth; Arcelio Limited; Bidvestor Trading Limited; Birchstone Capital AG; Bulktrade Limited; Chunguang Han a/k/a Han Chunguang; Daniel Podhaskie; Defeng Cao; Deities Digital LLC; Ding ("Ivan") Lin; Foudre Finance AG; GETTR USA, Inc.; Gladys Chow; GM 27 LLC; Gypsy Mei Food Services LLC; Haitham Khaled; Haoran He; Headwater Services LLC; Hing Chi Ngok; Jessica Mastrogiovanni; Jisen ("Jason") Hu; Karin Maistrello; Kevin Ma a/k/a Kun Ma; Kin Ming Je a/k/a William Je; Lawall & Mitchell, LLC; Leanne Li a/k/a Nan Li; Limarie Reyes Molinaris; Max Krasner; Mei Guo; New Federal State of China a/k/a NFSC;Nicholas Savio; Prime Fund Solutions AG f/k/a Scarabaeus Wealth Management AG; Qiang Guo a/k/a Mileson Guo; Qidong Xia; Ravinder Shokar a/k/a Rav Shokar; Rui Hao; Savio Law LLC; Scott Barnett; Stichting Duurzame; Stichting Gewelf; Taurus Management LLC; The Lost Draft LLC; Victor Cerda; X49 FZ LLC; Yanping ("Yvette") Wang; Yongbing Zhang; Yumei Hao; and Zhang Wei. As to any such entity or individual, this term shall include, as applicable, any agents, representatives, employees, directors, officers, managers, members, attorneys or other persons acting on its behalf."

However, the Defendant has generally objected to the Trustee's definitions of Alter Ego Entity and Debtor-Associated Entity/Individual and, in so doing, has apparently flatly refused to provide documents or information related to the Debtor's alter egos apart from Saraca. *See* Ex. 3, ¶¶ 4-6; Ex. 4, ¶¶ 4-6.[21]  For example, the Defendant has insisted on interpreting the term "Applicable Alter Ego Entity" (defined as "any Alter Ego Entity from which [the Defendant] received any" transfer of the Debtor's property or property of the Estate) so as to be limited solely to Saraca. *See* Ex. 3, ¶ 5; Ex. 4, ¶ 5.

42.     The Defendant's other Alter Ego Entities and the Debtor-Associated Entities through which the Debtor effectuated his fraudulent shell game are plainly relevant and otherwise subject to discovery.  First, the Trustee's claims in his Complaint are ***expressly not*** limited to the transfers through Saraca identified in Schedule A.  Rather, as stated in the Complaint, the Trustee seeks to avoid any fraudulent transfers that the Defendant received from the Debtor, through any of the Debtor's alter egos, in furtherance of the Debtor's shell game.  *See* Complaint at ¶¶ 27, 33 (the Trustee is seeking to avoid and recover transfers, "including, without limitation" those individually described in Schedule A and those made through Saraca "or otherwise"); *see also id.* at ¶ 14 (noting Saraca was one of many alter egos used by the Trustee).

43.     Moreover, any relationships and communications between the Defendant and the Debtor's other Alter Ego Entities and/or Debtor-Associated Entities/Individuals are relevant both to considering the Trustee's fraudulent intent in effectuating the transfers and to the Defendant's good faith or lack of same (*e.g.*, as concerns whether the Defendant was on inquiry notice of the Debtor's fraudulent shell game).  It is particularly critical that the Trustee investigate the latter given (a) the Defendant's assertion of defenses based on good faith and value and (b) evidence

---

[21]   References to exhibits in this Objection and Cross-Motion refer to exhibits to the *Declaration of Patrick R. Linsey* in support hereof filed herewith.

discussed above reflecting ████████████████████████████████████

████████████████████ that the Defendant is on the record as stating it knew that the Debtor

controlled Saraca. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Ex. 1 at ¶ 5 (Defendant's affirmative allegation that Debtor controlled Saraca).

44.     The Defendant's objections seeking to limit the Trustee's requests are without

merit.  As to the Alter Ego Entities, the Defendant states that the entities that the Trustee listed in

his definition of this term "have nothing to do with" the Defendant or this Adversary Proceeding

and so are not relevant.  The Defendant complains that the Trustee's list of Debtor-Associated

Entities/Individuals is overbroad, unduly burdensome, and vague.  However, the Debtor's various

other alter egos and agents are plainly relevant for the reasons discussed above.  Further, if the

Defendant did, in fact, have no involvement with or knowledge of the Debtor's other Alter Ego

Entities or Debtor-Associated Entities/Individuals, then the Defendant would presumably have no

documents concerning same and need not object on the basis of burden.[22]

45.     Accordingly, the Court should grant the Trustee's Cross-Motion and order the

Defendant, within fourteen (14) days, to supplement its responses and production to include and

---

[22]   The Defendant also objected to the Trustee's inclusion of any "agents, representatives, employees, directors, officers, managers, members, attorneys or other persons acting on [their] behalf" in defining Alter Ego Entities and Debtor-Associated Entities/Individuals on the basis that the Defendant lacks knowledge as to who such might be.  Trustee's counsel has stated to the Defendant during meet-and-confer sessions that the Defendant need only include the foregoing in its responses and production to the extent of its actual knowledge.

account for all Alter Ego Entities, Debtor-Associated Entities/Individuals, and Applicable Alter Ego Entities as defined by the Trustee.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court (1) deny the Defendant's Motion to Compel Responses to Requests to Admit and Interrogatories; (2) grant the Trustee's Cross-Motion to Compel Responses to the Trustee's Interrogatories; and (3) grant any other relief the Court deems appropriate.

Dated:   May 13, 2026                         LUC A. DESPINS,
         New Haven, Connecticut               CHAPTER 11 TRUSTEE

                                              By: /s/ *Patrick R. Linsey*
                                                  Patrick R. Linsey (ct29437)
                                                  NEUBERT, PEPE & MONTEITH, P.C.
                                                  195 Church Street, 13th Floor
                                                  New Haven, Connecticut 06510
                                                  (203) 781-2847
                                                  plinsey@npmlaw.com

                                                  *Counsel for the Chapter 11 Trustee*

21

**EXHIBIT A**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
------------------------------------------------------- x
In re:                                                  :
                                                        :        Chapter 11
HO WAN KWOK, et al.,¹                                   :
                                                        :        Case No. 22-50073 (JAM)
                   Debtors.                             :        (Jointly Administered)
------------------------------------------------------- x
LUC A. DESPINS, CHAPTER 11                              :
TRUSTEE,                                                :
                   Plaintiff,                           :
v.                                                      :        Adv. Proceeding No. 24-05246
                                                        :
WA & HF LLC,                                            :
                   Defendant.                           :
------------------------------------------------------- x
```

**[PROPOSED] ORDER *SUSTAINING* CHAPTER 11 TRUSTEE'S (I) OBJECTION TO WA & HF LLC'S MOTION TO COMPEL RESPONSES TO REQUESTS TO ADMIT AND INTERROGATORIES, AND *GRANTING* (II) CROSS-MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Pursuant to Rules 26, *et seq.*, of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rules 7026, *et seq.*, of the Federal Rules of Bankruptcy Procedure; upon the *Motion to Compel Responses to Requests to Admit and Interrogatories* [ECF No. 43] (the "Motion") filed by defendant WA & HF LLC (the "Defendant") and the *Objection* to the Motion (the "Objection") and *Cross-Motion to Compel* (the "Cross-Motion") [ECF No. ___] filed by Luc A. Despins, in his capacity as chapter 11 trustee (the "Trustee") in the chapter 11 case of Ho Wan Kwok; and sufficient notice having been given; and after due deliberation and sufficient cause appearing therefore, it is hereby

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

ORDERED, that the Motion is DENIED and the Cross- Motion is SUSTAINED in all respects; and it is further

ORDERED, that, within fourteen (14) days of entry of this Order, the Defendant shall supplement its responses and production to the Trustee's Discovery Requests to include and account for all Alter Ego Entities, Debtor-Associated Entities/Individuals, and, where known to the Defendant, any agents, representatives, employees, directors, officers, managers, members, attorneys or other persons acting on the behalf of entities or individuals that are at issue in the Trustee's interrogatories and requests.[2]

---

[2]   Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Cross-Motion.

2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
------------------------------------------------------------ x
In re:                                        :
                                              :          Chapter 11
HO WAN KWOK, et al.,¹                         :
                                              :          Case No. 22-50073 (JAM)
                      Debtors.                :          (Jointly Administered)
------------------------------------------------------------ x
LUC A. DESPINS, CHAPTER 11                    :
TRUSTEE,                                      :
                      Plaintiff,              :
v.                                            :          Adv. Proceeding No. 24-05246
                                              :
WA & HF LLC,                                  :
                      Defendant.              :
------------------------------------------------------------ x
```

## CERTIFICATE OF SERVICE

The foregoing, and all supporting exhibits, declarations, and other attachments thereto, was filed in the above-captioned adversary proceeding (the "Adversary Proceeding") using the Court's case management/electronic case files ("CM/ECF") on the date hereof in redacted form on the public docket (the "Redacted Version") and under seal in unredacted form (the "Sealed Version"). Notice of the Redacted Version was sent to all appearing counsel in this Adversary Proceeding at the time of filing and within one business day undersigned counsel will transmit the Sealed Version to counsel for the Defendant (brich@barclaydamon.com) via email.

---

¹ The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Dated:    May 13, 2026                LUC A. DESPINS,
             New Haven, Connecticut      CHAPTER 11 TRUSTEE

By: /s/ *Patrick R. Linsey*
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

    *Counsel for the Chapter 11 Trustee*

2